UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN THE MATTER OF ADMINISTRATIVE SUBPOENAS TO BANK OF AMERICA, N.A. AND OTHER FINANCIAL INSTITUTIONS, <br><br> UNITED STATES SECURITIES AND EXCHANGE COMMISSION <br> 100 F STREET, N.E. <br> WASHINGTON, D.C. 20549 | **FILED UNDER SEAL** <br><br> Miscellaneous No. _____ |

**MEMORANDUM IN SUPPORT OF APPLICATION
FOR AN EX PARTE ORDER PURSUANT TO SECTION 21(h)(4) OF
THE SECURITIES EXCHANGE ACT OF 1934**

This Application seeks an *ex parte* order in furtherance of a nonpublic investigation being conducted from the Washington, D.C. office of the United States Securities and Exchange Commission (the "Commission"). The Commission is investigating whether Bethany Liou a/k/a Sulan Liou ("Liou"), sole owner of Golden California Regional Center, LLC ("GCRC"), violated the U.S. securities laws in connection with the offering of limited partnership interests in an EB-5 project called GCRC Cupertino Fund, LP ("Cupertino Fund").[1]

As part of this investigation, the Commission's staff has prepared a form of subpoena for service to the Bank of America, N.A. and to other financial institutions that may be identified by the Commission based on information obtained from Bank of America, N.A. or elsewhere. These subpoenas would seek to obtain copies of Liou's personal financial records and/or information contained in those records. The Commission submits this memorandum in support of its Application for an *ex parte order* pursuant to Section 21(h)(4) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78u(h)(4), delaying the notice required by the Right

---

[1] The EB-5 Visa program, administered by U.S. Customs and Immigration Services ("USCIS"), offers U.S. residency to foreign nationals in exchange for qualifying investments that create U.S. jobs, including in USCIS-approved regional centers, like GCRC.

to Financial Privacy Act of 1978 when the Commission seeks customer financial records (the "Application"). Specifically, the Commission seeks an *ex parte* order that: (i) delays, for at least ninety days from the date of that order, any required notifications to Liou of the Commission's subpoenas; and (ii) prohibits the financial institutions, and their officers, employees, or agents, from disclosing that the Commission has sought or obtained copies of the information contained in Liou's financial records with these institutions.

## I. RELEVANT STATUTORY PROVISIONS

Under Section 21(h)(4) of the Exchange Act, if the Commission's application for an order delaying notice meets certain requirements, "the presiding judge or magistrate shall enter an *ex parte* order granting the requested delay. . . ." Exchange Act § 21(h)(4)(A), 15 U.S.C. § 78u(h)(4)(A). The requirements relevant to this Application are that:

1. The Commission seeks records pursuant to subpoenas issued in conformity with the requirements of Section 19(c) of the Securities Act of 1933[2] ("Securities Act"), 15 U.S.C. § 77s(c), and Section 21(b) of the Exchange Act, 15 U.S.C. § 78u(b), because they are "relevant or material" to the matters under inquiry;

2. The Commission has reason to believe one or more of the following:

    a. that delay in obtaining access to Liou's financial records, or providing customer notice, will result in the "transfer of assets or records outside the territorial limits of the United States;" that such delay or notice will result in the "improper conversion of investor assets;" and/or that such delay or notice will "impede[] the ability of the Commission to identify or trace the … disposition of funds involved" in the securities transactions at issue. Exchange Act §§ 21(h)(2)(A)(iii), (iv), and (v), 15 U.S.C. §§ 78u(h)(2)(A)(iii), (iv), and (v); and

---

[2] Subsections (b) and (c) of section 19 of the Securities Act were re-designated in 2002 as subsections (c) and (d), respectively, and a new subsection (b) was inserted.

    b.  that "the acts, practices, or course of conduct under investigation involve a financial loss to investors or other persons protected under the securities laws which remains substantially uncompensated." *Id.* at § 21(h)(2)(C)(ii), 15 U.S.C. § 78u(h)(2)(C)(ii); and

  3.  The Application is made with reasonable specificity. *Id.* at § 21(h)(3), 15 U.S.C. § 78u(h)(3).

  According to the legislative history, Congress enacted Section 21(h) of the Exchange Act, with its provision for delay of notice to a customer, because Congress felt it was "important to afford the Commission prompt access to financial records in order to exercise its responsibilities under the federal securities laws."[3] The Committee Report on the legislation noted that "[b]ank records, in particular, are an essential source of information for understanding the financial transactions which the Commission must investigate to discharge its responsibilities."[4] Thus, once the prescribed showing is made with respect to a no-notice subpoena for financial records, "the presiding judge or magistrate must enter an *ex parte* order granting the request. . . ."[5]

## II. APPLICATION OF THE LAW TO THE SUBPOENAS AT ISSUE HERE

  As discussed in the accompanying Declaration of Melissa A. Robertson ("Robertson Declaration") ¶ 4, the Commission's staff desires to serve a subpoena to Bank of America, N.A., attached as Exhibit B to the Robertson Declaration, pursuant to its Formal Order of Investigation ("Formal Order") in this matter, attached as Exhibit A to the Robertson Declaration. The staff also desires to serve to other financial institutions subpoenas of the same form as the subpoena to Bank of America, N.A., as reflected by Exhibit C to the Robertson Declaration. The staff would

---

[3] H.R. Rep. No. 96-1321, Part I, 96th Cong., 2d Sess. 2 (1980).

[4] *Id.* at 3 (footnote omitted).

[5] *Id.* at 9.

issue and serve those additional subpoenas where the Commission is able to identify additional accounts of Liou as a result of the Bank of America, N.A. subpoena or other information.

As discussed in Robertson Declaration ¶ 5, the information sought in the subpoenas is relevant to the matters under investigation. The subpoenas, therefore, conform to the requirements of Section 19(c) of the Securities Act, 15 U.S.C. § 77s(c), and Section 21(b) of the Exchange Act, 15 U.S.C. § 78u(b), because they are "relevant or material" to the matters under inquiry. This satisfies the first requirement relevant to this Application.

Four independent bases satisfy the second requirement of this Application:

(1) As discussed in Robertson Declaration ¶ 29, the Commission has reason to believe that if there is delay in obtaining access to Liou's financial records, or if customer notice is provided, it will result in the transfer by Liou of assets or records outside the territorial limits of the United States. The Commission's information indicates that Liou is the only person with access to and control of the Cupertino Fund assets. It also indicates that Liou regularly wires money abroad from accounts she controls. Liou could therefore readily use her network of international contacts to transfer investor assets abroad, rendering them irrecoverable.

(2) As discussed in Robertson Declaration ¶ 30, the Commission has reason to believe that if there is delay in obtaining access to Liou's financial records, or if customer notice is provided, it will result in the "improper conversion of investor assets" by Liou. In particular, Liou has already directed almost all of the investor funds in the Cupertino Account to her personal bank account or business accounts controlled solely by her, which contradicts the offering documents provided to investors with their investments. *See id.* ¶¶ 19-21, 23-24. Also, she is facing lawsuits alleging she has breached contractual obligations, which she may satisfy using the funds she seems to have converted from Cupertino Fund investors. *See also id.* ¶ 26.

(3)     As discussed in Robertson Declaration ¶ 31, the Commission has reason to believe that if there is delay in obtaining access to Liou's financial records, or if customer notice is provided, it will result in impeding the ability of the Commission to identify or trace the disposition of funds involved in the securities transactions at issue under its investigation. Again, based on the information obtained by the Commission, Liou has given herself sole access to and control over the funds and could thus easily move them abroad or use them for purposes other than that which is permitted by the investment offering documents, if she has not already done so.  Liou has numerous contacts in China and Taiwan and travels abroad.  As noted, she regularly wires money abroad from the accounts she controls.  *See id.* ¶ 25, 29.

(4)     As discussed in the Robertson Declaration ¶ 32, the acts, practices or course of conduct under investigation surrounding Liou involve a financial loss to investors or other persons protected under the securities laws which remains substantially uncompensated. Liou's conduct involves transferring more than $45 million dollars of investor funds to accounts controlled by Liou.  Again, these transfers appear to violate the terms of the Cupertino Fund private placement memorandum and partnership agreement and to have been made without any authorization from investors. *See generally* Robertson Declaration ¶¶ 11-24. [6]

The Cupertino Fund investors are protected under the securities laws, because their investments were "investment contracts" under Section 2(a)(1) of the Securities Act, 15 U.S.C. § 77b(a)(1),  and Section 3(a)(10) of the Exchange Act, 15 U.S.C. § 78c(a)(10).  Courts in the Ninth Circuit, the circuit in which the Commission would likely file any case pertaining to this Fund, have held that EB-5 investments like the investments in this case constitute investment

---

[6] The Commission staff learned of Liou's conduct while investigating other individuals.  While the staff has been in contact with Liou related to a potential fraud involving those other individuals, the staff does not believe that Liou has reason to know that the Commission has obtained the bank records of the Cupertino Fund Account or discovered that Liou transferred investor funds from the Cupertino Fund Account into her personal account.  *See id.* ¶ 27.

contracts. SEC v. Feng, No. 15-cv-9420, 2017 U.S. Dist. LEXIS 103592 (C.D. Cal. June 29, 2017); SEC v. Liu, No. 16-cv-974, 2017 U.S. Dist. LEXIS 216503 (C.D. Cal. Apr. 20, 2017). Therefore, the Commission has satisfied the second requirement relevant to this Application.

Finally, the Application also meets the third requirement set forth above, that it is made with reasonable specificity. *See generally* Robertson Declaration ¶¶ 8-27 and Exhibits, which set forth the facts and circumstances of this Application with reasonable specificity.

### III. CONCLUSION

The Commission respectfully submits that all of the necessary requirements have been met with respect to the Application, as established by this memorandum, the Robertson Declaration and the Subpoenas and the SEC Formal Order attached to the Application. Thus, pursuant to Section 21(h)(4)(A) of the Exchange Act, 15 U.S.C. § 78u(h)(4)(A), the Commission requests that this Court grant the Application and enter the requested order.

Dated: February 8, 2018            Respectfully submitted,

By: */s/ Kenneth W. Donnelly*_____
Kenneth W. Donnelly (DC Bar No. 462996)
Attorney for Commission
100 F Street, N.E.
Washington, D.C. 20549
Phone: (202) 551-4946
Fax: (202) 772-9282
donnellyk@sec.gov